UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO HERRING ASSOCIATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, et al.,<br><br>Defendants. | Case No. 14-cv-04393-WHO  (JCS)<br><br>**ORDER UNDER MEDIATED INVESTIGATION AGREEMENT GRANTING IN PART AND DENYING IN PART PLAINTIFFS' APPLICATION TO REQUIRE CHANGES TO NORTH BEACH/FILLMORE MGP WORKPLAN** |

The parties entered into a Mediated Investigation Agreement (the "MIA") dated October 1, 2015 which generally relates to the investigation of the nature and extent of MGP Residue in certain areas of San Francisco. MIA at II.A.  By motion dated January 20, 2017, Plaintiffs seek to amend the workplan for the North Beach and Fillmore investigation areas to include (1) chemical fingerprinting of certain samples taken from the two investigation areas, and (2) bioassay testing to evaluate the impact of MGP Residue on herring (the "Motion").  After full briefing, this motion was submitted to the undersigned for final non-appealable resolution pursuant to the MIA.

PG&E makes two principle arguments in opposing the Motion.  First PG&E argues that the work plans at issue have already been approved by the DTSC and the Water Board, and that the MIA only requires that PG&E only perform the scope of work approved by the administrative agencies.

This argument is correct as far as it goes, but is not a reason for the court to decline to address whether the workplans at issue should be modified.  The MIA envisions a process by which the parties will submit workplans to the agencies for approval. MIA II.E.2.a.  Those proposed workplans are to be agreed to by the parties, or, if necessary, determined through the dispute resolution procedures of the MIA.  *Id.*  Once a workplan is approved in whole or in part by

the agencies, only the agency-approved work must be done by PG&E. *Id.* However, the MIA does not prohibit the parties from proposing modifications of workplans to the agencies. The parties my use the same process as the original proposed workplan to arrive at a proposed modification: the proposed modification would be submitted to the agency for approval after it has either been agreed to by the parties, or, if necessary, determined through the dispute resolution procedures of the MIA.[1] The Court treats the instant application as a proposed modification that is in dispute, and, even if approved by the Court, must be submitted to the agencies for their consideration. Because the MIA does not provide a mechanism for the parties to create binding workplans without agency approval, but instead describes a process for submitting workplans to the agencies, the Court concludes that its authority in resolving disputes concerning workplans that arise during that process is limited to determining what proposals shall be submitted to the agencies.

PG&E also argues that the Motion should be denied because the proposed changes go beyond the purpose of the MIA. PG&E argues that the tests requested by Plaintiffs do not concern the "nature and extent" of the MGP Residue, but rather concern who is responsible for that residue and its potential impact on herring. The Court agrees in part.

While bioassays may be useful in determining PG&E's liability, that is not the purpose of the MIA. The MIA is designed to determine what contamination is in the locations investigated: the "nature and extent of MGP Residue." The Court generally agrees with PG&E that, in the context of the MIA, the inquiry as to the "nature" of the residue calls for investigation of what the residue *is*, not what effect it has. The hope is that, after this investigation is completed, the parties will be in a position to discuss what remedies are appropriate for the contamination found. The bioassays advocated by Plaintiffs are not within the scope of the MIA.[2]

Chemical fingerprinting, on the other hand, is designed to determine what contamination,

---

[1] The Court does not, by this holding, limit the comments that any party may submit to the administrative agencies regarding a workplan, and does not address whether a request for modification may be submitted directly to the administrative agency by one of the parties to the MIA.

[2] The administrative agencies, of course, are not bound by the MIA in determining the scope of the investigation that they would require.

if found, is "MGP residue." Determination of what is and is not MGP Residue is within the scope of the MIA. Contrary to PG&E's arguments in its opposition brief, the MIA does not call for examination of the nature and extent of all contamination in the areas at issue, *cf.* Opp'n at 3, or "which contaminants are where," *cf. id.* at 10, but instead calls for determination of "the nature and extent of MGP Residue" as that term is defined in the agreement—i.e., "waste produced as a result of, and/or in connection with, the operation, of [a manufactured gas plant]." MIA I.D, II.A. Tests to determine whether contaminants are in fact "MGP Residue" are relevant, and likely necessary, to understanding the "extent" of MGP Residue in the area, particularly where the question of whether such contamination is in fact "MGP Residue" appears to be remain disputed. That this question might overlap with issues of PG&E's responsibility for the contamination does not remove it from the scope of the MIA. Accordingly, the Motion is granted to the extent that Plaintiffs seek to require the parties to propose to the agencies an amended work plan for the North Beach and Fillmore investigation areas that includes the chemical fingerprinting identified by Plaintiffs in the Motion.

**IT IS SO ORDERED.**

Dated: March 3, 2017

JOSEPH C. SPERO
Chief Magistrate Judge